UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



JOHN E. LENEAR,

    Plaintiff,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

CIVIL ACTION NO. 04 CV 72357 DT

DISTRICT JUDGE GERALD E. ROSEN

MAGISTRATE JUDGE VIRGINIA M. MORGAN

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security Disability (DIB)/Supplemental Security Income (SSI) case comes before the court on the Commissioner's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment or in the Alternative Motion for Remand. For the reasons stated herein, the court recommends that the Commissioner's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II. Background

On September 15, 1999, plaintiff sustained a severe crush injury to his right hand when it got caught in a piece of machinery at his place of employment. Plaintiff subsequently filed an application for DIB, and was awarded a closed period of benefits from September 15, 1999, to September 15, 2000.

On April 9, 2001, plaintiff filed a second DIB application, and on September 27, 2001, he filed an application for SSI, claiming that he continued to be disabled.[1] Following the initial denial of his applications by the Social Security Administration (SSA), plaintiff requested a hearing before an administrative law judge (ALJ). The hearing was held on May 1, 2003. (Tr. 248-77)

On July 23, 2003, the ALJ issued a decision denying plaintiff's applications. (Tr. 13-20) The ALJ determined that plaintiff had a history of a severe crush injury to his right hand, bilateral hand pain, left shoulder pain, right-sided pain down to his groin, and a learning disability. The ALJ concluded that plaintiff's impairments were "severe" withing the meaning 20 C.F.R. §§ 404.1520, 416.920, but that he did not have an impairment that met or equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15) The ALJ further determined, based upon the hearing testimony of a vocational expert (VE), that in spite of his impairments, plaintiff was capable of performing a significant range of sedentary work.[2] (Tr. 19). Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 27-29)

---

[1] Plaintiff's disability onset date for the purposes of his DIB and SSI applications was December 30, 2000. (Tr. 31, 222)

[2] "Sedentary" work is defined in 20 C.F.R. §§ 404.1567, 416.967(a) as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

On August 4, 2003, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 8) The Appeals Council denied the request. (Tr. 5-7) The ALJ's decision thus became the final determination of the Commissioner.

On July 15, 2004, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As noted above, the matter comes before the court on the Commissioner's motion for summary judgment and plaintiff's motion for summary judgment or, in the alternative, for remand to the Commissioner. Plaintiff claims that the ALJ improperly applied the Medical-Vocational Guidelines in denying his applications and that the ALJ erred in relying upon the VE's testimony in determining that he was not disabled. In addition, plaintiff submitted, by means of a reply brief, new evidence regarding his mental condition. He requests that the matter be remanded to the Commissioner for consideration of this evidence.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

> area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See also 42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920. In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards.

Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV. Analysis

#### A. Application of Medical-Vocational Guidelines

Plaintiff contends that the ALJ erred in relying upon the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, at the fifth and final stage of the disability determination process. In support of his argument, plaintiff cites Abbot v. Sullivan, 905 F.2d 918 (6th Cir. 1990).

In Abbot, the Sixth Circuit held that if a claimant "suffers from both exertional and nonexertional impairments, where the grid does not yield a finding of 'disabled' when the exertional impairments are considered alone, the grid may be employed only as a 'framework' to provide guidance." Id. at 926; see also 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2). Thus, where the claimant has both exertional and nonexertional impairments, the ALJ cannot rely solely upon the grids to render a finding that the claimant is not disabled.

Contrary to plaintiff's argument, the ALJ did not rely solely on the grids in determining that he was not disabled. The ALJ expressly stated in his opinion that the "Medical-Vocational

Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion *and/or has any nonexertional limitations.*" (Tr. 17, emphasis added)  The ALJ also stated the following: "a finding of 'not disabled' is therefore reached *within the framework of Medical-Vocational Rule 201.24.*" (Tr. 18, emphasis added)  These excerpts demonstrate that the ALJ understood that the grids were to be applied as a framework only in light of plaintiff's nonexertional impairment.  Further, the ALJ took testimony from a VE regarding plaintiff's ability to engage in substantial gainful activity. While plaintiff contends that the ALJ's reliance on the VE's testimony was flawed, the fact remains that the ALJ went beyond the grids and consulted with a VE to determine whether plaintiff was disabled.

The record clearly establishes that the ALJ did not rely solely on the grids in determining that plaintiff was not disabled.  Accordingly, plaintiff's first claim of error is rejected.

### B. Hypothetical Question

The ALJ made the following determination regarding plaintiff's residual functional capacity (RFC):

> The claimant has the following residual functional capacity: stand/walk six of eight hours, sit six of eight hours, lift ten pounds occasionally and lesser weights frequently with no more than occasional bending, stooping, no climbing steps, no reaching above shoulder level, no power gripping with either extremity but can do simple grasping and fine manipulation with the left hand, no pushing/pulling over ten pounds with the left hand and no use of the right hand on a repetitive basis and limited to simple, unskilled work with instruction by demonstration only with no reading.

(Tr. 19) At the hearing, the ALJ asked the VE a series of hypothetical questions in which he incorporated the above RFC determination. (Tr. 270-75) Based on the testimony of the VE, the ALJ concluded that plaintiff was capable of performing a significant number of sedentary jobs in the regional economy and, therefore, that he was not disabled. The ALJ indicated, as an example, that there were 3,000 security monitor jobs in southeastern Michigan that plaintiff could perform. Plaintiff claims that the hypothetical questions posed by the ALJ did not accurately reflect all of his limitations and, therefore, that the ALJ's reliance on the VE's testimony was flawed.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding.

Plaintiff's first claim of error in this regard does not address the accuracy of the hypotheticals *per se*, but is directed at the VE's testimony regarding the security monitor job he identified as an example of a job that plaintiff could perform. The VE testified that such jobs require the worker to do no more than to sit, monitor a security television, and report any problems to the proper authorities. Plaintiff contends that the VE's testimony "defies common sense." Plaintiff's Brief at p. 12.

The court finds plaintiff's argument to be wholly without merit. The VE stated that his testimony regarding the requirements of the jobs he identified was consistent with the requirements set forth in the <u>Dictionary of Occupational Titles</u>, and plaintiff has presented no evidence to the contrary. (Tr. 275) There is nothing in the record to warrant a finding that the VE's testimony regarding the requirements of a security monitor job was so lacking in foundation that the ALJ could not reasonably rely thereon in concluding that plaintiff was not disabled. Accordingly, plaintiff's claim of error is rejected.

Plaintiff further contends that the hypotheticals did not fully address his reading difficulties. More specifically, plaintiff claims that the ALJ should have included in the hypotheticals the fact that he could not make change and that he was a special education student when he was in school. The court disagrees. The ALJ informed the VE that plaintiff read at a third-grade level, and the ALJ incorporated in the hypotheticals the limitations that plaintiff could receive instructions by demonstration only, that there be no reading involved, and that plaintiff be restricted to simple, unskilled work. These restrictions were more than sufficient to accommodate plaintiff's reading deficiencies.

Plaintiff's further contends that the ALJ did not fairly incorporate in the hypotheticals his complaints regarding his pain. The basis of plaintiff's argument is entirely unclear. He cites no specific shortcomings in the hypotheticals, merely stating, in conclusory fashion, that the hypotheticals were deficient in this regard. In any event, the court finds plaintiff's argument to be without merit. The ALJ specifically stated in the hypothetical that plaintiff had a right hand crush injury with residual pain, that he had bilateral hand pain, shoulder pain, and right side pain

that radiated down to his groin. (Tr. 271) Further, the ALJ included in the hypotheticals restrictions on the amount of weight plaintiff could lift, pushing/pulling restrictions, grasping restrictions, a restriction to no work involving reaching above shoulder level, limitations on bending and stooping, and a restriction to simple, unskilled work. Id. Thus, the ALJ addressed the issue of plaintiff's pain in the hypotheticals, and the court finds that the restrictions incorporated therein were sufficient to accommodate plaintiff's complaints of pain. Further, as discussed in greater detail below, to the extent the ALJ discredited plaintiff's allegations of pain, he did not err in so doing.

Plaintiff's also argues that the ALJ did not properly incorporate in the hypotheticals his sitting and standing limitations. Plaintiff testified at the hearing that he could sit for up to two hours at a time and that he could stand for three or four hours at a time. (Tr. 263) The ALJ determined, consistent with the findings of a consulting physician, that plaintiff was capable of sitting for six hours out of an eight hour workday and that he could stand and/or walk for six hours out of an eight hour workday, and the ALJ included such a limitation in one of the hypotheticals he posed to the VE.[3] The ALJ thus addressed plaintiff's sitting and standing/walking limitations, and plaintiff points to nothing in the record indicating that greater restrictions were warranted. Further, to the extent the ALJ discredited plaintiff's allegations and testimony regarding his sitting and standing limitations, there was ample basis in the record for the ALJ to do so, as is discussed further below.

---

[3]The consulting physician indicated in a Physical Residual Functional Capacity Assessment form, dated June 15, 2000, that plaintiff could: (1) occasionally lift and/or carry up to 20 pounds, (2) frequently lift and/or carry up to 10 pounds, (3) stand and/or walk for 6 hours in an 8-hour workday, and (4) sit (with normal breaks) for 6 hours in an 8-hour workday. (Tr. 129)

Plaintiff further asserts that the ALJ erred in assessing his credibility in that the ALJ failed to set forth his reasons for finding that plaintiff's allegations regarding his pain and limitations were not fully credible. With regard to the issue of assessing a claimant's credibility, SSR 96-7p states the following:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not ) credible." It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for than weight.

The ALJ plainly failed to comply with this requirement in assessing plaintiff's credibility. In his opinion, the ALJ stated that "[t]he undersigned finds the claimant's allegations regarding his symptoms are not totally credible for the reasons set forth in the body of the decision." (Tr. 19) However, there are no "reasons" stated in the decision. Thus, there is no way for the court to determine the extent to which the ALJ found plaintiff's allegations to be lacking in credibility or why the ALJ reached such a conclusion.

While an ALJ's failure to state the grounds for his credibility determination might warrant a remand in the proper case, the court finds that the ALJ's failure to do so in this case constitutes harmless error. The ALJ's RFC determination and the hypotheticals were largely consistent with plaintiff's subjective complaints regarding his functional limitations. Further, to the extent plaintiff alleges that he suffers from disabling pain, there is ample evidence in the record to support a finding that plaintiff's allegations are lacking in credibility. When asked to

rate his pain on a scale of one to ten, with ten being severe pain, plaintiff testified that his pain was a three or four, suggesting that he suffered from only mild to moderate pain. (Tr. 266) Further, plaintiff took only Motrin and Advil to relieve his pain, and there is no indication in the record that he ever went to a pain clinic for treatment. See, e.g., Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990)(use of only mild medications undercuts complaints of disabling pain). In addition, with the exception of the pain in his right hand, it appears from plaintiff's testimony that he experiences pain only upon exertion, which the ALJ reasonably accommodated in the hypotheticals, or on an intermittent basis based on changes in the weather. Further, there is no objective medical evidence in the record of any condition that could reasonably be expected to give rise to the pain plaintiff complains of in his left hand and shoulder or his right-sided, radiating pain. See, e.g., 20 C.F.R. § 404.1529(b)("Your symptoms, such as pain...will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present"). Moreover, there is no evidence in the record that plaintiff has ever sought treatment for those conditions. See, e.g., Blacha, 927 F.2d at 231 (failure to seek treatment undercuts complaints of disabling pain). It also appears from the record that plaintiff sought little, if any, treatment for his right hand injury after December, 2000. Based on the foregoing, the court finds that to the extent the ALJ discredited plaintiff's complaints of disabling pain and related limitations, he did not err in so doing.

Based on the foregoing, the court finds that the hypotheticals posed by the ALJ to the VE were consistent with the medical evidence in the record, as well as the record as a whole, and that

they provided the VE with a fair and accurate description of plaintiff's exertional and nonexertional limitations. Accordingly, the VE's testimony in response thereto constitutes substantial evidence to support the ALJ's finding that plaintiff retained the capacity to perform a significant number of sedentary jobs in the regional economy.

### C. Remand for Consideration of Mental Impairment

In December, 2004, well after plaintiff filed suit for review of the Commissioner's decision, plaintiff underwent two psychological evaluations. Plaintiff attached to his reply brief the reports prepared in connection with these evaluations. The December 1, 2004, report shows, among other things, a diagnosis of major depression with psychotic symptoms and a GAF score of 48.[4] The December 6, 2004 report also includes a diagnosis of major depression, with a GAF score of 42. Plaintiff requests that the matter be remanded to the Commissioner for consideration of these reports pursuant to sentence six of 42 U.S.C. § 405(g).

Sentence six of § 405(g) states, in part, the following:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner filed the Commissioner's answer, remand the case to the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

Thus, a sentence six remand is warranted where the claimant demonstrates the following: (1) that new, material evidence is available, and (2) that there is good cause for the claimant's

---

[4] A Global Assessment of Functioning (GAF) score of 48 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job).

failure to introduce the evidence in the proceedings before the ALJ. See, e.g., Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (1984). Further, as the Sixth Circuit stated in Foster, supra, 279 F.3d at 357 (citations omitted):

> For the purpose of a 42 U.S.C. § 405(g) remand, evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding. Such evidence is material only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. A claimant shows good cause by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. As noted above, the burden of showing that a remand is appropriate is on the claimant.

Applying these standards, the reports plaintiff relies on in seeking a remand are certainly "new," as they did not exist at the time of the proceedings before the ALJ. However, the reports are not "material," and plaintiff has failed to satisfy the "good cause" requirement.

With respect to the issue of materiality, the psychological evaluations in question were performed nearly four years after plaintiff's December 30, 2000, disability onset date. Thus, the reports have little, if any, bearing on plaintiff's condition at or near the onset date. Certainly, if these reports were consistent with other evidence in the record showing that plaintiff suffered from a psychological impairment at or near the disability onset date, they may be of some relevance to his claim. However, the administrative record is devoid of any such evidence, or any evidence indicating that he sought psychological treatment during the relevant time period. Further, both of the examinations were performed within the span of six days and, as previously noted, there is no evidence in the record that plaintiff was diagnosed with, or sought treatment for, a psychological impairment prior to that time. The records do not provide a longitudinal

picture of the severity of plaintiff's condition and are thus of marginal evidentiary value. For the reasons stated above, the court finds that the records plaintiff relies on in seeking a remand do not satisfy the "materiality" requirement of § 405(g).

In addition to the above, the reports indicate that plaintiff began feeling depressed shortly after he sustained his work-related hand injury in 1999. However, at no time during the administrative proceedings did plaintiff, who was represented by counsel during those proceedings, seek a psychological evaluation on his own or file a request for a consultative examination. Plaintiff has provided the court with no reasonable explanation for his failure to do so. Accordingly, plaintiff has failed to satisfy the "good cause" requirement of § 405(g). See, e.g., Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986)("[I]n order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing").

For the reasons stated above, the court finds that the psychological evaluation reports submitted by plaintiff do not meet the requirements for a remand under sentence six of § 405(g).

## IV. Conclusion

For the reasons stated herein, the court recommends that the Commissioner's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment or in the Alternative Motion for Remand be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

Dated: 1/27/2005

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE